When interpreting a statute, this Court has made very clear that the place you begin with is the plain meaning of the statute. And only when the party seeking to avoid that plain meaning presents very strong evidence of a contrary legislative intent can the Court ignore the plain meaning of the statute. And the Tax Court did absolutely the opposite here. The Court went straight to the perceived policy behind Section 2035, placed the burden on the estate to support the plain meaning of the statute, and ignored the policy behind the Q-tip statutes. But if you start with the plain meaning of Section 2035b, factor in the policy, if necessary, if the Court deems necessary, behind the Q-tip statutes, it becomes clear that 2035b was never intended to apply in a situation that we have here. 2035b is absolutely unambiguous. It includes in a decedent's estate any gift tax paid by the decedent or his estate on any gifts made by the decedent or his estate within three years of death. Mr. Porter, let me ask you something. I take it you would agree with me that if there is any evidence in the record which would sustain the factual findings and the findings of the Tax Court, we are at liberty to use that evidence to sustain. I'm not certain I agree with that, Your Honor, primarily because the application of 2035b in this case is a question of law. Let's just explore that for a second. Is there any evidence in this case that the gift tax was indeed paid by Mrs. Morgans? There is none, Your Honor. You think so? All right. Let me go over an exhibit with you. It's your gift tax return for 2001, I believe it is, which is Exhibit G. It's ER 456. Got that? I don't have it in front of me, Your Honor. All right. As I read it here, as to the gift to James H. Morgans, five-sevenths interest, the total was $20 million. But in the fourth box on the left is a notation, gift tax recovered with a D, past tense, from Morgans Family Residual Trust A under Section 2207A. Recovered. Now that means to me that you represented to the IRS in the gift tax return that $5,494,000 had been recovered from the Morgans Family Residual Trust. There's no doubt that the Morgans Family Residual Trust paid that tax and thereby discharged the liability of Mrs. Morgans to pay the tax. And Mrs. Morgans stated in her tax return that she recovered that. Why isn't that evidence that Mrs. Morgans paid the tax? Because the parties have stipulated, Your Honor, for example, in paragraph 30 of the stipulations, which override the exhibits, the trustees of Residual Trust A paid the, in this case, the $2,287,000 of gift tax associated with the value of the residuals. Meaning that they sent the check from the amount of the trust, from the funds in the trust. Absolutely. But the funds in the trust were treated, at least for a gift and estate tax purposes, as her money. Yes and no, Your Honor. They are treated for purposes of calculating the tax, but the treatment of those funds as Mrs. Morgans' assets is not so broad as both the tax court and the commissioner would state in this case. They were, as the courts in Mellinger and Bonner noted, it's not an absolute treatment of these assets as Mrs. Morgans. She's not deemed to be the owner for all purposes of transfer tax purposes. But she is deemed to be the owner for transfer tax purposes. For purposes of calculating the tax, for purposes of determining whether there's a marital deduction under 2056. Which is ultimately what's at stake here. I mean, it would be, if what you wanted to do were done, you would be taking money that, because of the fortuity of how the arrangements were made between them. Because they could have been done the other way, right? She could have written the check and recovered from the trustee. That's true, Your Honor. And your view, everything turns on that. No, I think it's a distinction without a difference. Because when you look to the ultimate source of the funds, the ultimate source of the funds is the QTIP. Right. Which is consistent with Congress's intent when it passed the QTIP statutes, that neither the surviving spouse nor her heirs bear any burden for any tax. And the language in the legislative history is clear. Any burden for any tax associated with the QTIP. Well, that leads to something I was wondering as I was walking in here. The QTIP provisions also provide for recovery of any estate tax paid with regard. They do, Your Honor. Won't this money just come out at the end? No. From the QTIP? No. Because under the recovery statute, under 2207A, that recovery right is limited to those, the property which is included in the gross estate by reason of Section 2044. 2044 is the statute that includes the QTIP property in the decedent's estate. Right. The gift tax at issue here, as the Commissioner is arguing and the tax court found, is included in the estate by reason of Section 2035B. So that recovery right that's in 2207AA does not apply to that particular, does not apply to that type of an inclusion. Well, yes, but you have a contractual right for any incidence of taxation to recover. But that's not at issue in this case, Your Honor. If that were at issue, the question ultimately before the court is whether 2035B causes the gift tax paid to be included in the estate. Right. If the contractual right, if the Commissioner asserted that the contractual right to recover the tax has caused inclusion of property in the estate, that would be an asset of the estate that would be included under 2033. But that right didn't exist at the time Mrs. Morgans died. The tax had already been paid. So the fact is the absence of a recovery right, the absence of inclusion of gift tax paid attributable to a deemed gift in the 2044 statute. You're suggesting that 2207 should have contained such a provision. Absolutely, Your Honor, because Congress was well aware of 2035B and its potential effect when it passed the Q-tip statutes. The other thing, I mean, it does seem that there was some oversight in writing here, because what it seems that it really should have contained is a notion that when one of these deemed transferred occurred, the whole thing should be tasked as if it was in the estate of the original, the first decedent, because this way what's happening, if this sort of manipulation is allowed, is that the government ultimately is not getting the estate tax from the first decedent, which it would have gotten, and it's not getting the estate tax from the second decedent. Potentially. That is a potential case. That's for this case. It is in this case, Your Honor. But the question ultimately is who's to be penalized for that oversight? Should it be the estate or should it be the government who actually wrote the statute? Because Congress was well aware of 2035B when it enacted the Q-tip statutes. And had it contemplated that 2035B would apply in the context of a relinquishment, because it clearly contemplated that a surviving spouse could relinquish her interest in Q-tip, but had it contemplated 2035B would apply, it would have provided a right of recovery, because the legislative history with respect to the Q-tip statutes was absolutely clear that Congress did not want the surviving spouse or her heirs burdened by any transfer taxes attributed to the Q-tip. But it says that that isn't, that that was the general policy, but it was not carried out entirely. And it wasn't carried out with respect to the unified credit and something else. I forget what. Right. And it does say that both the tax court and the government say it wasn't carried out with respect to the unified credit. But recall the unified credit is not a tax pay. The language in the legislative history wanted to relieve the surviving spouse of any, the burden with respect to any tax pay. And it went so far as to include penalties and interest on Q-tip property. But the loss of unified credit is not tax pay per se. It results in tax pay eventually. Potentially. No doubt, Your Honor. But looking at the plain language of the legislative history, I can see why they didn't include that. Whereas they did want to basically hold the surviving spouse harmless for being out of pocket, so they included any tax, they included any penalties, and they included any interest. And so if there is someone who is to be penalized may not be the right word to use, but if it's to be held against someone, it should be held against the Congress and against the service. But they gave the right of recovery. They didn't eliminate the liability as a donor under 2502, right? They could have done that. They could have said a donor of a Q-tip trust is not liable for any gift tax purposes. They could have done that. But the distinction, I believe, Your Honor, is without a difference. Well, no, because the right of recovery can be exercised or not. It's up to the individual who has it. But if the individual doesn't exercise the right of recovery, then they're penalized because they're deemed to have made a gift. And so the right of recovery, as we see in 2519, it even references the right of recovery as an integral part of the imposition of gift tax. They have to be looked at hand-in-hand. That's the one piece of this I was curious about, how it interacts. That is, the fact that the government is trying to draw a direct analogy to the net gift and tax cases. And it seemed to me that at least one potentially major difference is the fact that this right of recovery is not neutral, i.e., if it isn't exercised, it's a gift. So it seems to be, and I'm wondering what you make of that in terms of your overall argument. I think that's an integral part of it. Because if we look at the Sachs line of cases and we compare them to what we have with respect to the Morgans case, the net gift is fundamentally different. The transferred property in those cases, in the Sachs case, was the donor's property. The tax and the donor had control over it. And the tax was paid by the donee using the donor's funds as a result of an agreement or a condition placed on it by the donor. Very different in our case. Well, this is, I mean, that's because this property is treated weirdly by the tax code. It's treated as being her property for tax purposes. The QTIP property. But not for all purposes, Your Honor. And I think that's fundamentally the point. And, in fact, for purposes of assessing the gift tax, it's not necessarily treated completely as her property because the tax isn't ultimately borne by her. It's borne by the QTIP and its beneficiaries. And as the Court pointed out, if the surviving spouse doesn't exercise that right of recovery, they're subject to gift tax. So it's clear that the tax was always intended to come out of the QTIP property and not to burden the surviving spouse. She's not subject to gift tax if the donee pays the gift tax. I'm sorry, Your Honor? She's not subject to gift tax if the donee pays the gift tax. Well, that's right. But you're talking about the donor. And then she doesn't have a right of reimbursement because she didn't pay the tax in the first place. Correct. Essentially, the right of reimbursement has been fulfilled. Yeah. Exactly. Is that what happened here? Yes. And that's one of the reasons why we argue that none of the 2035B doesn't apply. But your argument depends on you're saying it's a plain words argument, but it isn't exactly, because I believe you said that even if she had written the check, we'd still be in the same place. Well, if we're going beyond the facts of this case, yes. Right. But the fact, based on the facts of this case, she didn't write the check. Yes. But because of the right of recovery, it wouldn't make any sense to care for the tax code to care who wrote the check. And you're agreeing with that. So therefore, nothing can turn on who wrote the check. You just have to figure out some other reason for putting the onus on the Q-tip beneficiaries and no one else, and that's what you're trying to do. But I don't think the plain words part of it is determinative even under your argument. Well, bottom line, Your Honor, is at the end of the day, who wrote the check is the Q-tip, and that's who was always intended to write the check based on the way the Q-tip statute operates, because the tax was intended to be paid out of the Q-tip. And I'm just about out of time, Your Honor, so I'll save my 22 seconds.  Thank you. Good afternoon. Excuse me. Good afternoon, Your Honor. Bethany Hauser for the Commissioner of Internal Revenue. As the Court has already correctly perceived, the government's position here is that this case is not materially distinguishable from the net gift arrangement in Sachs. It's not Sachs? Yes. This case should follow the reasoning of Sachs. It's not materially distinguishable from the net gift arrangement in Sachs for the very simple reason that the Q-tip statutes are designed to treat Q-tip property as property held in fee by the surviving spouse. That's the type of property that was at issue. A fee-pop property is the type of property that was at issue in Sachs. And since the Q-tip statutes are. But there are the statute does seem to be concerned because of the right of recovery both for the gift tax and for the estate tax, that ultimately the beneficiaries of the Q-tip bear the tax burden and not the heirs of the second surviving spouse. So this is an exception to that. And it does have a feel of something that was forgotten in the drafting. If you mean to suggest that you think there should be a 2207 cafe C covering. Either that or the, the, once the, the gift, the interest has been renounced and there's a deemed gift, and it's only a deemed gift, it's not a real gift, it should be taxed as if it were in the first seems estate. And this way the government is getting something of a windfall because you're getting a, in your, in your way you want to do it, the government is getting money from the second estate and without any right of recovery from the beneficiaries. So the, I don't know if it's the government that's getting the windfall, the beneficiaries are getting the windfall, but somebody's getting the windfall. It doesn't seem to follow the overall plan. I think it would have to be the beneficiaries and not the government, especially if you think this could, the better treatment would have been to include it in the estate. Either way, you would at least be getting the money from who really was benefiting from it and not from this artificial deemed gift. Two points with respect to that. One is that in this case there's actually an indemnification agreement that covers estate taxes, so that on the facts of this case we don't need to worry about that inequity. And the second is that that's not a distinct, that's not a distinction with Sachs. It's always the case with a net gift that the, a net gift that is then subject to the gross up rule that the beneficiary of the gift, the donor of the gift, might not be included as a beneficiary of the estate. And that's not by the workings of anything in the tax code. It's just by a set of individual agreements. But here we have a set of determinations that are being made by the tax code who was supposed to, as to who was supposed to be bearing the burden. And in particular, this notion that if the first, if the surviving spouse does not recover the gift tax, then she's making a gift certainly seems to place the burden of the gift tax not in a voluntary way, but as a matter of the code directly on the QTIP beneficiaries. The idea that the surviving spouse, if she does, if she pays the property, if she  And so it's, as we stated in our brief, really just computational. It might seem to have more rhetorical force. I do. Kagan. Tell me why. Explain that to me. Just first, I want to point out that it's under the regulations, not under the code. But it's because the way the net gift is computed, there's a set of equations for computing net gifts because taking the gift tax out of the property transferred winds up with interrelated equations. It's complicated. There's a regulation that takes care of it. When the property comes out of the, when the gift tax comes out of the QTIP property in relinquishment during life, like we have in this case, then it's, the computations are the same. It's the same net gift arrangement because the same thing is going on. The total property transferred from the transferor does not wind up in the hands of the beneficiary. Part of that property is transferred as a gift, and the other part of the property is transferred on the understanding that the beneficiary will use it to pay the gift tax, in both the net gift situation and in a relinquishment of QTIP during life where there, where the beneficiaries pay out of the QTIP property. But that's just another way of saying that it's a mandatory transfer and not a voluntary one, and that's why when, when the surviving spouse doesn't partake of it, she's making a gift. She's, well, in other words, it's not that she can recover. It's that they are to bear the burden of the tax as far as the tax code is concerned, they, the beneficiaries. It's not a right to recover. But it, I mean, 2207a is phrased in terms of a right to recover. Except that if it's an exercise, it's a gift. So it's not, it's not, it's not, it is really a statement that the, as you were saying, that the gift tax is to be, come out of the QTIP beneficiaries. Ultimately, it's a statement that they, that it would be economically just for it to come out of the QTIP beneficiaries. But again, it's the surviving spouse who's liable to the government for the gift tax, not the QTIP beneficiaries. The Congress had, they wanted. Well, how do you square that statement with 2207a? The whole purport of 2207a is that the donor spouse or surviving spouse in the QTIP agreement is not to bear the tax. She has a right to recover it. She has a private right of action to recover it, but she's still the one who's liable. You just said a private right of action. Something that hasn't been briefed, and I don't know if you have a response to this. What enumerated power of the federal government gives the federal government the right to say that A can recover money from B? Isn't that a state question? It isn't taxed because nobody's taxing them. I suppose that might be. It doesn't have the slightest effect on interstate commerce. What gives the Congress the right to say this lady can, or her estate can recover the tax from these beneficiaries? I suppose they thought it was necessary and proper to the QTIP regime. Necessary and proper is when you exercise a delegated or enumerated power. But you haven't thought about that. I haven't thought about it in detail. The QTIP regime does have to do with the tax. If 2207 were to be constitutionally infirm, what effect would that have on this case? I really haven't thought about that. Well, think about that. All right. Pardon me. Actually, I think if 2207 were to be constitutionally infirm, this would be taxed because there's a private agreement that the beneficiaries will pay the gift tax. And if there were no 2207, then there'd be nothing. Then you'd have a SAX case. Then you'd have a SAX case. Plain and simple. Yes. All right. Okay. If there are no other questions, the Commissioner will rest on his briefs. Thank you. Can I give him a couple minutes? I'm sorry? Can I give him a little bit of rebuttal? Sure. May it please the Court. In answer to Judge B's question, I think the property that's in the QTIP is includable in the decedent's estate typically. It's subject to tax basically based on the same constitutional right that gives Congress the ability to impose estate taxes. And I think it's a necessary. Transfer. Transfer taxes, yes. And I think it's a necessary extension of that right. And that's why we haven't briefed it, but I believe that that would be the answer to your question. Okay. Thank you. Thank you. Thank you. We will adjourn for the afternoon, and the case is submitted. All right. Do you want to take this? Thank you.
judges: George, Berzon, Bea